IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**ROBERT TAPLIN**                                                                     **PLAINTIFF**

**v.**                                                                   **Cause No. 3:12-cv-8-CWR-FKB**

**MARK ELLINGTON; WAL-MART**                               **DEFENDANTS**
**STORES #1192 INSURANCE COMPANY**

## ORDER

Pending before the Court is the defendants' motion to dismiss the plaintiff's Title VII, 42 U.S.C. §§ 1981a and 1983, and Fourteenth Amendment claims. Docket No. 2. The plaintiff has responded in opposition with a motion to quash, Docket No. 4, as well as a motion for equitable tolling, Docket No. 7. The defendants have replied, Docket Nos. 6 and 10, and the matter is ready for review.

After considering the allegations, the parties' arguments, the available record evidence, and the applicable law, the Court finds that the defendants' motion to dismiss is meritorious and will be granted as to its specific arguments. The plaintiff's Family Medical Leave Act claims, which were not the subject of any motion to dismiss, will remain pending in this suit.

*I.*     *Factual and Procedural History*

The following allegations are drawn from the complaint and its attachments, and assumed to be true for the purposes of the pending motions.

In 2002, Robert Taplin, an African-American male, was hired to work at Wal-Mart Store #1192, in Magee, Mississippi, where he later rose to the position of Assistant Manager. Docket Nos. 1, at 1; 1-2; 1-4; 1-5. After seven years there he started applying for further promotions. Docket No. 1, at 1. Taplin ultimately applied for seven positions, but each time was not promoted. *Id.* at 2. Taplin spoke with manager Mark Ellington "to find out what the problem was," and Ellington said he didn't know. Docket No. 1, at 2. But Ellington provided good recommendations for two white men who were promoted, while declining to provide good recommendations to Taplin. *Id.*

In addition to the failure to promote, Ellington allegedly made racist remarks in Taplin's presence about other African-American employees, by calling them "Niggers" and suggesting that they were drug dealers based on their clothing. *Id.* at 2 and 4. Ellington permitted a co-manager to

make similar racist statements. *Id.* Ellington treated Taplin differently from other employees by changing Taplin's schedule on short notice and entering false records about Taplin missing work. *Id.* Those false records were alleged to be the cause for Taplin's promotion rejections, even though Taplin had "solid performance evaluations" and "very high" sales profits. *Id.* at 2.

Separately, Taplin described that he had wrongfully been denied a medical accommodation in violation of the Family Medical Leave Act ("FMLA") and the United States Constitution. *Id.* at 3. On advice of his doctor, in September 2009 Taplin asked Wal-Mart's Human Resources Director if he could work day shifts only, in order to accommodate a diabetic condition causing him to fall asleep easily. *Id.* The Human Resources Director denied the request and instead suggested that Taplin take three months off and return to work as an hourly employee. *Id.* Taplin further alleged that Ellington had a role in the denial of accommodation. *Id.*

On March 21, 2011, Taplin filed a charge of discrimination with the EEOC setting forth his failure to promote claim. Docket No. 1-4. On July 29, 2011, the EEOC issued him a right to sue letter, which advised he could pursue his claim in court if he filed a lawsuit within 90 days of receiving the right to sue letter. Docket Nos. 1-2; 1-5.

On January 5, 2012, Taplin filed this suit against Ellington and Wal-Mart seeking damages and injunctive relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981a and 1983, the Equal Protection Clause of the Fourteenth Amendment to the Constitution, and the FMLA. Docket No. 1, at 1, 3, and 5.

II.     *Present Arguments*

The defendants first argue that Taplin's race discrimination claim is barred because it was filed more than 90 days after his receipt of the EEOC's right to sue letter. Docket No. 3, at 1. They then say individuals are not liable under Title VII, which means that the claim against Ellington must also be dismissed. *Id.* at 2. They continue, "[b]ecause Taplin's Title VII claim must be dismissed, his claims for Title VII damages under 42 U.S.C. Section 1981a must also be dismissed." *Id.* Finally, the defendants contend that the Fourteenth Amendment and Section 1983 claims are improper because neither Wal-Mart nor Ellington are state actors. *Id.*

Taplin responds that he had hired an attorney to take on his case, and throughout the 90-day period was under the impression that he was represented by counsel, who had kept Taplin's right

2

to sue letter. Docket No. 4, at 1.[1] Once that arrangement fell through and Taplin got his right to sue letter back, he realized his time was expired, searched for new counsel, and ultimately filed his complaint *pro se*. *Id.* Taplin then states that phone records show the dates and times he tried to reach the attorney. *Id.* Regarding Section 1983, Taplin argues that the statute can be applied to private employers, and should be applied to Wal-Mart because its "rules and policies are governed by state and federal guidelines." *Id.* He denies that the Section 1981a claim is flawed. *Id.*

In rebuttal, the defendants point out that no phone records were attached to Taplin's response brief, and then argue that he does not qualify for equitable tolling. Docket No. 6, at 1-2. They contend that Taplin "may have a more compelling case" for equitable tolling if he had filed suit closer to the expiration of the 90-day period, but assert that the complaint was instead filed 160 days after he received the right to sue letter. *Id.* at 2-3.

Taplin subsequently moved the Court to equitably toll the deadline, alleging that the attorney kept his right to sue letter and refused to return phone calls for months. Docket No. 7, at 1. He then says the defendants' argument is inconsistent: if they would accept a slightly-late complaint under equitable tolling, why not accept his complaint? *Id.* Taplin has attached his telephone records from August 17, 2011 to October 16, 2011, and identified 10 calls he made to a number in Raleigh, Mississippi; the number he claims is to the office of the attorney. Docket No. 8-1.

The defendants later reiterated their opposition to equitable tolling. Docket No. 9.

III.    *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of actions that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009) (citations and quotation marks omitted) (unpublished); *see Ivy v. Lane Furniture Indus.*, No. 1:08-cv-20, 2009 WL 1663439, *2 (N.D. Miss. June 15, 2009).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor.

---

[1] Taplin's response is captioned as a memorandum in support of a motion to quash, and was filed by the Clerk of Court as a motion to quash. In substance, though, the document is a response in opposition to the defendants' motion to dismiss.

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (citation and quotation marks omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted).

Since *Iqbal*, the Fifth Circuit has clarified that the Supreme Court's "emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011).

IV. Discussion

A. Title VII

Title VII provides complainants 90 days to file a lawsuit "after the giving of" the EEOC's right to sue letter. 42 U.S.C. § 2000e-5(f)(1). This requirement is "strictly construed." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citations omitted). The 90-day period "begins to run on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant." *Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir. 1986). "When the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Taylor*, 296 F.3d at 379 (citations omitted).

Presuming that Taplin received the EEOC's right to sue letter seven days after it was mailed, his date of receipt was August 5, 2011. *See Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010) (applying a "liberal," seven-day presumption period). Adding 90 days, Taplin had until November 3, 2011, to file suit. His January 5, 2012 complaint was 63 days late.

Although equitable tolling can extend the filing period, it is a doctrine "to be applied sparingly" and with the plaintiff shouldering the burden of proof. *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (quotation marks and citations omitted). A habeas petitioner, for example, "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely

4

filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quotation marks and citations omitted).

There are at least three grounds for equitable tolling, including "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." *Granger*, 636 F.3d at 712 (citation omitted). None of those grounds are present here.

The Fifth Circuit recognized that there could be other, unenumerated grounds for equitable tolling, in "rare" circumstances where the claimant had exercised due diligence in pursuing a judicial remedy, among other factors. *Id.* at 712-13; *see also Wilson v. West*, 962 F. Supp. 939, 944 (S.D. Miss. 1997) (evaluating a plaintiff's claim to equitable tolling based on a medical condition, and ultimately denying equitable tolling). In affirming the district court's application of equitable tolling, for example, the *Granger* court found that:

> [The plaintiffs] secured counsel soon after their resignation from Aaron's. Their signed complaints were submitted to the government months before the 300-day period expired. Their attorney's staff made repeated contact with [a government agency], which never communicated the filing error and maintained that the complaints were under investigation. The government's lengthy delay was egregious and exceptional. The [district] court found that Aaron's had not shown it was prejudiced by the delay.

*Granger*, 636 F.3d at 713. Thus, that case had evidence of claimant diligence, attorney diligence, egregious government inaction, and no prejudice to the defendant. *See id.*

Taplin's briefing to this Court cites *Holland*, which held that an attorney's "professional misconduct" could "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Holland*, 130 S. Ct. at 2563. But that case went on to distinguish "garden variety" neglect – which would not support equitable tolling – from "far more serious instances of attorney misconduct," like when counsel for Holland failed to communicate with his client over a period of years and missed several critical deadlines, for a client who was on death row. *Id.* at 2564.

Taplin bears the burden of showing that his case warrants equitable tolling. His evidence for equitable tolling consists of phone records showing 10 calls made to an attorney's office over a two-month period. There is no evidence of the substance of those conversations – what Taplin told

5

the attorney's office or what he was told in return. There is no evidence that the attorney accepted the case. Nor is there other evidence indicating Taplin's diligence. Although the attorney is alleged to have retained possession of the right to sue letter during the relevant time period, Taplin could have filed suit without that letter.[2]

Even assuming that the attorney accepted the case and failed to timely file suit, that by itself is insufficient to constitute the "far more serious" attorney misconduct required to warrant equitable tolling. *Holland*, 130 S. Ct. at 2564; *see Harris*, 628 F.3d at 240 ("Merely because the negligence was on the part of her attorney and his staff does not entitle Harris to equitable tolling – a party is bound by the acts of her lawyer. This is another garden variety act of attorney negligence.").[3] More of the *Granger* factors are necessary.

Considering the evidence, the present situation is distinguishable from those that have previously merited equitable tolling. Because Taplin's complaint was untimely and the 90-day clock cannot be tolled, his Title VII claims will be dismissed.

Separately, the defendants are correct that a Title VII claim cannot be maintained against an individual. "Individuals are not liable under Title VII in either their individual or official capacities." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) (citation omitted). The Title VII claims against Ellington will be dismissed.

 B.  Section 1981a

The defendants next argue that a 42 U.S.C. § 1981a claim must run concurrently with a Title VII claim and cannot stand alone. Docket No. 3, at 5 n.2 (citing *Perry v. Dallas Indep. Sch. Dist.*, 1998 WL 614668, *1 (N.D. Tex. Sept. 2, 1998)). They are correct:

> Section § 1981a does not create a new substantive right or cause of action. Rather, the plain language of the statute shows that it merely provides an additional remedy for "unlawful intentional discrimination . . . prohibited under . . . 42 U.S.C. § 2000e-2 or 2000e-3." Those sections of title VII, then, provide the underlying substantive right . . . .

---

[2] On that note, Taplin's motion for equitable tolling states that he "submitted a letter from the attorneys' office showing where [the] attorney kept my letter from the EEOC past the allotted time for me to seek additional counsel." Docket No. 7, at 1. But no such letter is contained in the record.

[3] While not necessarily qualifying for equitable tolling, leading on a prospective client for an extended period of time can be a significant problem, for both the attorney and the potential client. Statutes of limitations are serious matters and warrant prompt communication from attorneys to prospective clients.

*Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998) (citations omitted). Therefore, Taplin's Section 1981a claims fall with the Title VII claims.[4]

    C.    *Section 1983*

"To state a cause of action under section 1983 the appellant must allege that the person who deprived him of a federal right was acting under color of law." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (citation omitted). "[S]tate action is a prerequisite for bringing an action under Section 1983." *Rundus v. City of Dallas*, 634 F.3d 309, 312 (5th Cir. 2011) (citation omitted).

Since the defendants in our case are a private corporation and a private citizen, the Court must ask whether either "acts under color of state law, and is thus a state actor for Section 1983 purposes." *Id.* As an example, the Supreme Court has held that a private corporation governing public school athletics "was a state actor, because it was created to govern public school athletics; its members were mostly public schools; its employees were treated as state employees, and were eligible for state retirement benefits; and it was supported by gate receipts from games played between public schools and from membership fees paid by those schools." *Id.* (citation omitted). Corporations that cooperate with and provide economic benefits to the government are not necessarily state actors; more factors than those must be taken into account. *Id.* at 314 (collecting cases).

Under this standard, Wal-Mart and Ellington are not state actors. They cannot be deemed state actors solely because Wal-Mart is regulated by the state and federal governments, as Taplin suggests. Such a rule would make every person and corporation a state actor, because we are all subject to state and federal regulations and laws. The 42 U.S.C. § 1983 claims will be dismissed.

    D.    *Fourteenth Amendment*

"The Equal Protection Clause directs that persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705, *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999). But again, "the Fourteenth Amendment protects liberty and property interests only against invasion by a state." *Priester*, 354 F.3d at 421 (citation omitted). Because neither Wal-Mart nor Ellington

---

[4] While Taplin references 42 U.S.C. § 1981 at least once in his opposition to the defendants' motion to dismiss, *see* Docket No. 4, at 1, he has not brought such a claim. Indeed, in his Prayer for Relief in the Complaint, he prays "*to be compensated under 42 U.S.C. § 1981 (a)*." Docket No. 1, at 5 (emphasis added).

are state actors, the Fourteenth Amendment claims will be dismissed.

    *E.    FMLA*

The defendants have not moved to dismiss Taplin's claims under the Family Medical Leave Act, which therefore remain pending in this suit.

*V.    Conclusion*

The defendants' motion to dismiss is granted as to their enumerated arguments and denied as to their request for the entire action to be dismissed. Taplin's motion to quash and motion for equitable tolling are denied.

The parties are directed to contact the Magistrate Judge within 10 days to set up a Case Management Conference for the entry of a scheduling order and other matters.

**SO ORDERED**, this the 13th day of July, 2012.

                                                s/ Carlton W. Reeves
                                                UNITED STATES DISTRICT JUDGE